UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY FORD,

          Plaintiff,                  No. 18-12809

v.                                 District Judge Linda V. Parker
                                 Magistrate Judge R. Steven Whalen

ANTHONY STEWARD, ET AL.,

          Defendants.

_____ /

### REPORT AND RECOMMENDATION

Plaintiff Rodney Ford, a prison inmate in the custody of the Michigan Department of Corrections ["MDOC"], has filed a civil rights complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Before the Court is Defendants Charles Jamsen and Bienvenido Canlas's motion for summary judgment [Doc. #34], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

### I.    FACTS

At the time of the events alleged in the complaint, Plaintiff was incarcerated at the MDOC's G. Robert Cotton Correctional Facility in Jackson, Michigan. Plaintiff alleges in his complaint that on October 21, 2017, he injured his knee and/or leg while playing basketball. *Complaint* [ECF No. 1], ¶ 17. He was seen by Defendant Sophia Bradley, a nurse. *Id*. Bradley did not order x-rays or send Plaintiff for off-site evaluation, but provided him with crutches, ace wrap, Motrin, and ice detail for three days. *Id*.

Plaintiff alleges that on October 22, 2017, he sent a kite to prison health services

because his knee was still swollen and extremely painful.  He did not receive an immediate response.  *Id*. ¶ 18.  On October 24, 2017, after lunch, Plaintiff was seen by an as-yet unidentified medical officer, who, Plaintiff alleges, demanded that he return the crutches and ordered that he leave the clinic.  *Id*. ¶ 19.

On October 26, 2017, Plaintiff was transferred to the Chippewa Correctional Facility in Kincheloe, Michigan.  *Id*. ¶ 21.  Upon his arrival there, he underwent medical screening.  *Id*. ¶ 23.  X-rays were taken on November 1, 2017.  *Id*. ¶ 27.  On November 21, 2017, Plaintiff was given a CT scan at War Memorial Hospital in Sault Ste. Marie, and received follow-up evaluations and treatment at the hospital on January 3 and February 1, 2018.  *Id*. ¶¶ 31, 35-36.

Plaintiff alleges that all of the Defendants failed to implement proper medical procedures, and failed to take steps to remedy an obviously significant medical need.  *Id*. ¶¶ 45-46.

Plaintiff's MDOC medical records are appended to Defendants' motion as Exhibit A.  They show that on October 21, 2017, Plaintiff was seen by Sophia S. Bradley, R.N., presenting complaints of knee pain following a basketball injury.  Bradley's notes indicate that she performed an examination of Plaintiff's left knee.  Treatment included wrapping the knee with two Ace bandages, providing instructions for an ice detail three times per day for three days, giving the Plaintiff 18 tablets of ibuprofen with instructions for use, and providing crutches. Her notes state that the Plaintiff left in stable condition. *Defendants' Exhibit A*, ECF No. 35, PageID.218-19.  There are no notes or other records indicating that Plaintiff was seen by Dr. Jamsen.

Appended to Defendants' motion as Exhibit B is the affidavit of Defendant Dr. Jamsen, who states that he was a medical provider at the Cotton Facility at the time of the

events alleged in the complaint. *Jamsen Affidavit*, ECF No. 34-2, PageID.190, ¶ 2.  He reviewed Plaintiff's medical records, and states that he "had no involvement in Mr. Ford's medical care relevant to the injury that is the subject of this lawsuit." *Id*. ¶ 3.  He further states that he has no knowledge of Plaintiff's medical care or the medical judgments made in Plaintiff's treatment plan relative to the injuries alleged.  *Id*. ¶¶ 4-5.

On October 26, 2017, five days after he injured his knee, Plaintiff was transferred to the Chippewa Correctional Facility, and his medical transfer summary is contained in Defendants' Exhibit A, ECF No.35, PageID.220.  On November 1, 2017 he was seen and examined by a Nurse Practitioner, who ordered immobilization and provided crutches and medication, specifically Tylenol and Motrin, to be alternated. X-rays were also taken.  *Id*. PageID.222-26.  He was seen again on November 7, by NP Susan Wilson.  Medication, crutches, and splint ace wraps were continued, along with an order for a bottom bunk.  *Id*. 227-32.  The medical records show that he was given a CT scan offsite on November 21, and received followup treatment from NP Wilson through February 6, 2018.

On April 30, 2018, Plaintiff was seen by Gerald Cover, RN, following an incident where he slipped on water in the kitchen and twisted his knee. He was seen by R.N. Robyn Waybrant at a follow-up appointment on May 4, 2018.  *Id*. 261-64.

Plaintiff was first seen by Dr. Canlas at a provider visit on May 21, 2018.  Dr. Canlas ordered an x-ray and laboratory tests.  *Id*. 266-68.  The x-ray report, written by Dr. Michael A. Henderson, D.O., notes:

> "There is a re-demonstration of early arthritic changes on the posterior surface of the patella, which is represented as tiny spur formations.  The patellofemoral and knee joint articulating surfaces were otherwise unremarkable.
>
> IMPRESSION:
>
> 1.  Prepatellar and suprapatellar soft tissue swelling.

2.  Mild arthritic changes on the posterior surface of the patella.

Exhibit C to Defendants' motion is the affidavit of Dr. Canlas. He states that he examined Plaintiff on May 21, 2018 regarding pain in his left knee. He found no redness, swelling, warmth, tenderness, or limited range of motion in the left knee. *Canlas Affidavit*, ECF No. 34-3, PageID.192, ¶ 3.  Dr. Canlas states that he ordered x-rays of the left knee, and instructed Plaintiff not to lift weights or heavy objects, and not to engage in any yard activity. *Id*. On June 6, 2018, he reviewed the x-ray report. *Id*. ¶ 4. Dr. Canlas states that he saw Plaintiff again on August 9, 2018, at which time Plaintiff requested a knee brace.  Dr. Canlas advised that a knee brace was not medically necessary, and cautioned Plaintiff to avoid strenuous activities involving his left knee.  *Id*. ¶ 5.  Dr. Canlas states that he had no further involvement in Plaintiff's medical care.  *Id*. ¶ 6.

In his response to this motion, Plaintiff states that he first saw Dr. Canlas on May 21, 2018, "after plaintiff had been medically cleared from all injuries." *Plaintiff's Response*, ECF No. 39, PageID.293.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

-4-

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff."  *Anderson*, 477 U.S. at 252 (emphasis added).  If the non-moving party cannot meet that burden, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322-23.

## III.   DISCUSSION

Under the Eighth Amendment, prisoners have a constitutional right to medical care.  *Estelle v. Gamble,* 429 U.S. 97, 103 (1976).  Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834(1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must

allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

## A.     Defendant Jamsen

Dr. Jamsen was a medical provider at the Cotton Facility, where Plaintiff first injured his knee. However, between the time of Plaintiff's injury on October 21, 2017 and his transfer five days later on October 26, 2017, he was never seen by Dr. Jamsen. While RN Sophia Bradley's notes contain Dr. Jamsen's name at the end as "provider," *see* ECF no. 35, PageID.219, Defendant is correct that this notation does not mean that Dr. Jamsen actually saw, examined, or treated the Plaintiff. Rather, all of the medical records indicate that a "provider's" name appears on every Nurse Protocol form, regardless of whether that "provider" has actually seen the patient. RN Bradley's Nurse Protocol clearly indicates that it was she, not Dr. Jamsen, who examined the Plaintiff on October 21, 2017. This is consistent with Dr. Jamsen's affidavit indicating that he had no

involvement in Plaintiff's medical care.  Plaintiff has offered no evidence to the contrary,

including any evidence that Dr. Jamsen oversaw RN Bradley's examination and treatment

of the Plaintiff.

The plaintiff in a § 1983 case must show that a named defendant was personally

involved in the allegations underlying the complaint. *Rizzo v. Goode*, 423 U.S. 362, 372

(1976)*; Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984). Dr. Jamsen was not personally

involved.  Moreover, even if he were RN Bradley's supervisor, his liability cannot be

based merely on a theory of *respondeat superior*.  In *Reed-Bey v. Pramstaller*, 2010 WL

5056182, at *7 (E.D. Mich. 2010), the Court summarized the law as follows:

> "The Sixth Circuit 'has held that § 1983 liability must be based on more
> than respondeat superior, or the right to control employees.' *Shehee v.
> Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (citing *Hays v. Jefferson Cty.,
> Ky.*, 668 F.2d 869, 874 (6th Cir.1982)). Supervisory officials are personally
> liable in damages only for their own unconstitutional behavior. *Leach v.
> Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989). In order for
> liability to attach to Russell and Pramstaller, in their roles as supervising
> officials, Reed–Bey must show that they 'did more than play a passive role
> in the alleged violation or showed mere tacit approval of the goings on.'
> *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999). Reed–Bey must
> establish, at a minimum, that they 'either encouraged the specific incident
> of misconduct or in some other way directly participated in it.' *Hays*, 688
> F.2d at 874. Liability must be based on 'active unconstitutional behavior.'
> *Robinson*, 167 F.3d at 1048."

Here, the Plaintiff has shown nothing more than Dr. Jamsen's name at the bottom

of a Nurse Protocol generated by RN Bradley.  Because that is insufficient to support a

claim of supervisory liability, Dr. Jamsen is entitled to summary judgment.

## B.    Dr. Canlas

First, the medical records show that from Plaintiff's initial intake review at the

Chippewa facility on October 6, 2017 to the first time he saw Dr. Canlas on May 21,

2018, he received consistent and continuing evaluation of and care for his knee, including

x-rays, a CT scan, medication, splints and wrappings, immobilization, orders for a bottom

bunk, and instructions to avoid strenuous activity.  So whether or not Plaintiff agrees that his level of care was appropriate, or whether the medical providers could have done more is beside the point under an Eighth Amendment analysis.  *See Westlake v. Lucas, supra*; *White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990)(disagreements over medical judgment or treatment cannot form the basis of an Eighth Amendment claim).

As to Dr. Canlas, Plaintiff has not met the objective prong of an Eighth Amendment claim, that is, he has not shown that on May 21, 2018, he presented to Dr. Canlas with a sufficiently serious medical condition.  Plaintiff acknowledges that he was "medically cleared from all injuries" when he first saw Dr. Canlas.  Moreover, his x-rays showed only some swelling and mild arthritic changes. On examination, Dr. Canlas found no redness, swelling, warmth, tenderness, or limited range of motion in the left knee. These findings do not support a claim that Plaintiff's condition on May 21, 2018 was objectively serious under the Eighth Amendment.  *See eg. Veloz v. New York*, 35 F.Supp.2d 305 (S.D.N.Y.1999) (fracture fragment, bone cyst and degenerative arthritic in the toe were not objectively serious conditions); *Galego v. Scott*, 2011 WL 6752563, at *3 (D. Nev. 2011), Report and Recommendation adopted, 2011 WL 6754086 (D. Nev. 2011)(objective standard not met where plaintiff had bone spurs in his right ankle that were possibly arthritic); *Chatin v. Artuz*, 28 Fed. Appx. 10 (2d Cir.2001)(sprained ankle, bone spur, and neuroma insufficient to meet objective standard).

Plaintiff also fails the subjective standard. Dr. Canlas examined Plaintiff, ordered x-rays, and recommended that Plaintiff refrain from strenuous activities.  He opined that a knee brace was not medically indicated.  Again, under an Eighth Amendment paradigm, it is not for this Court or the Plaintiff to second-guess Dr. Canlas's medical opinion that conservative treatment was appropriate. *Westlake v. Lucas*.

-8-

Accordingly, Dr. Canlas should be granted summary judgment.

## IV.   CONCLUSION

I recommend that Defendant Jamsen and Canlas's Motion for Summary Judgment [ECF No. 34] be GRANTED.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: January 27, 2019

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 27, 2019, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen

-10-